IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

05 OCT -3 PM 4: 05

CLERK-ALBUQUERQUE

GALAXY VENTURES, LLC,
a New Mexico limited liability company,

       Plaintiff,

v.                                                                    No. CIV 03-1236 JH/LFG

CARL D. ROSENBLUM, an
Individual, CHARLES "TIM" ALLEN,
an Individual, and ORVILLE "GREGG"
ALLEN, an Individual,

       Defendants.

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants propose the following findings of fact and conclusions of law concerning Plaintiff's claim for injunctive relief (Count Four of the complaint) and, to the extent that it is equitable in nature, Plaintiff's request for a quiet-title decree (Count Seven):

### Findings of Fact

1.      By Special Warranty Deed dated May 1, 1998, DePonte Investments, Inc. ("DPI") transferred to Defendants Charles "Tim" Allen and Orville "Gregg" Allen ("the Allens") "an undivided one-half co-tenant's interest" in the Midtown Land Tracts, which covered Tracts B-1-C, B-1-D, B-1-E, and B-1-F. (Defs.' Ex. A.) (All exhibit references are to Defendants' trial exhibits, which are described in Defendants' Trial Exhibit List (Sept. 26, 2005).)

2.      On October 17, 2001, the New Mexico Human Services Department ("HSD") issued a Request for Proposals for the Leased Office Space for the Income Support Program (the "RFP"). (Defs.' Ex. E.) The RFP required respondents to "indicate ownership of the facility offered for



lease"; and "if a corporation or other legal entity own[ed] the facility, the proposal ... also [had to] indicate the principal individual owners and percentages of their ownership." (See id. at Bates Nos. HSD 00209.)

3.    On December 13, 2001, DPI responded to the RFP. (Defs.' Ex. F.) In its response to the RFP, DPI held itself out as the sole owner of the proposed property and warranted that it, DPI, was not representing any other parties.   (See id. at Bates Nos. HSD 00234 and HSD 00238 (identifying the responding entity as "DePonte Investments, Inc.," and signing the response "Brent DePonte, President, on behalf of DPI").)  DPI did not notify the Allens that it had responded to the RFP. (Testimony of Tim and Gregg Allen; Testimony of Brent DePonte.)

4.    On February 14, 2002, DPI was awarded the project pursuant to the RFP. (Defs.' Ex. H.)  DPI did not notify the Allens of this development.  (Testimony of Tim and Gregg Allen; Testimony of Brent DePonte.)

5.    On July 19, 2002, a DPI employee wrote a letter to the City of Albuquerque, which stated that DPI had "entered into an agreement with [HSD] to build and then lease a 24,000 square foot building" on Tract B-1-E. (Defs.' Ex. T.) DPI did not inform the Allens about this agreement. (Testimony of Tim and Gregg Allen; Testimony of Brent DePonte.)

6.    DPI negotiated lease terms with HSD in August 2002, again without informing the Allens. (Defs.' Ex. Y; Testimony of Tim and Gregg Allen; Testimony of Brent DePonte.)

7.    On or about October 16, 2002, First State Bank approved DPI's request for a construction loan to construct a building on Midtown Land Tracts C and E ("the Property") pursuant to the awarded HSD project. (Defs.' Ex. AC; Testimony of Bill Dolan.) DPI made no mention of this fact to the Allens, who co-owned the Property at the time. (Testimony of Tim and Gregg Allen.)

2

8.    On October 17, 2002, DPI notified the Allens in writing that DPI wished to exercise its right under a Buy/Sell Agreement to either sell to the Allens its 50% ownership in the Property or else purchase the Allens' 50% ownership interest. (Defs.' Ex. AD.)

9.    On October 30, 2002, DPI executed a lease agreement with HSD concerning the Property. (Defs.' Exs. AE, AF.) DPI did not advise the Allens that it had done so. (Testimony of Tim and Gregg Allen.)

10.    On November 15, 2002, the Allens notified DPI in writing that they agreed to sell to DPI their 50% ownership interest in the Property. (Defs.' Ex. AI.)

11.    The lease agreement between DPI and HSD was finalized and fully executed by November 21, 2002. (Defs.' Exs. AE, AF, AG.) Nobody told the Allens about it. (Testimony of Tim and Gregg Allen.)

12.    On November 22, 2002, DPI organized a separate limited liability company – Plaintiff Galaxy – for which Brent DePonte is the registered agent and in which DPI owns a 50% interest and acts as the sole managing member. Galaxy further shares the mailing address and principal address of DPI. Lenzer Enterprises, LLC owns the other 50% interest in Galaxy. (Defs.' Exs. AL, AN; Testimony of Brent DePonte.)

13.    By warranty deed dated December 13, 2002, the Allens sold to DPI their 50% ownership interest in the Property. (Defs.' Ex. AT.)

14.    At the time that the Allens agreed to sell and actually transferred their 50% ownership interest in the Property to DPI, they had no knowledge that DPI had responded to HSD's RFP, that HSD had awarded the project to DPI, that DPI had agreed to construct an office building on the Property, that DPI had obtained a construction loan for this purpose, or that HSD had agreed to lease

3

the building from DPI.  (Testimony of Tim and Gregg Allen; Testimony of Brent DePonte.)

15.    On December 16, 2002 – three days after completing the purchase of the Allens'
interest – DPI transferred the Property to the newly formed Galaxy.  (Defs.' Ex. AV.)

16.    Even after this transaction, Brent DePonte and DPI repeatedly represented that they
owned the Property.  Several such assertions were made in the course of litigation and administrative
proceedings to which the Allens were parties.  (Defs.' Exs. BG, BM.)

17.    During the spring of 2003, the Allens learned of the July 19, 2002 letter described in
Finding 5 above.  (Testimony of Tim and Gregg Allen.)

18.    Since mid-2002, litigation between DPI and the Allens (among other parties) has been
pending in Dallas, Texas.  That litigation is captioned BAMMF (1), LLC, et al. v. DePonte
Investments, Inc., et al., No. 02-5182, B-44th Judicial District ("Texas Litigation").  (Testimony of
Tim and Gregg Allen.)

19.    On June 9, 2003, the Allens asserted in the Texas Litigation a claim seeking
rescission of the sale to DPI of their 50% ownership interest in the Property.  In requesting
rescission, the Allens alleged that DPI's failure to give the Allens notice of the HSD agreement and
its failure to obtain the Allens' unanimous approval and prior consent constituted a material
misrepresentation upon which the Allens justifiably relied to their economic detriment in selling the
property to DPI.  (Defs.' Ex. BW.)

20.    Thereafter – on June 26, 2003 – the Allens, through counsel, drafted and executed
an "Affidavit of Pending Claims and Disputed Title" ("Affidavit") and had it filed in the public
records of Bernalillo County.  The Affidavit announced the pendency of the Texas Litigation,
referred specifically to the Allens' rescission claim, and attached a copy of most recently amended

4

version of the Texas complaint. (Defs.' Ex. BW.)

21. The Texas Litigation remains pending. The Allens' rescission claim has not yet been adjudicated. (Testimony of Tim and Gregg Allen.)

### Conclusions of Law

1. The Court has jurisdiction of the subject matter and the parties.

2. The lis pendens statute, NMSA 1978, § 38-1-14 (1965), is not the exclusive means of using the public records to notify interested parties and the public about the pendency of lawsuits that may affect the title to New Mexico real estate.

3. If the lis pendens statute applies, the Affidavit does not violate it.

    a. The Texas Litigation has the potential to "affect[] the title to real estate in this state." Id.

        i. The Allens have asked the Texas court to rescind the sale to DPI of their 50% interest in the Property, on the ground (among others) that DPI breached a fiduciary duty that it owed to the Allens – as tenants in common – to disclose material facts related to the transaction. Although this Court need not and does not decide the merits of the Allens' rescission claim against DPI, the Court concludes that the claim is substantial in light of the facts recited above and the pertinent New Mexico law. See, e.g., Baum v. Great W. Cities, Inc., 703 F.2d 1197, 1212 (10th Cir. 1983) (concluding, under New Mexico law, that party seeking redress for forgery and concealment of material facts related to contract for sale of property has claim "to rescind the contract and for restoration of the status quo ante"); Smith v. Borradaile, 30 N.M. 62, 81, 227 P. 602, 607 (1924) (observing that, by operation of law, a "confidential relation" exists between tenants in common, requiring the tenants to act with "trust and confidence" toward one another and placing

them in a "fiduciary trust relation" with respect to their co-owned property); R.A. Peck, Inc. v.
Liberty Fed. Sav. Bank, 108 N.M. 84, 90, 766 P.2d 928, 934 (Ct. App. 1988) (concluding that when
a party "stands in a confidential or fiduciary relation to the other party to the transaction," he "must
disclose material facts" related to the transaction); Robison v. Katz, 94 N.M. 314, 319, 610 P.2d 201,
206 (Ct. App. 1980) ("The general rule in New Mexico is that rescission should be granted to a party
who, in entering a contract, justifiably relied on a misrepresentation of material fact, irrespective of
the good or bad faith of the party making the misrepresentation.").

      ii.    A Texas court has the power to order rescission of an interest in New
Mexico real estate.  The operative jurisdiction is not over the realty itself, but rather over persons
with the right to convey it.  See, e.g., Willis v. Willis, 104 N.M. 233, 234-35, 719 P.2d 811, 812-13
(1986) ("[T]he Texas court (in which both parties appeared) had the authority and, therefore, the
jurisdiction to ... make division of [New Mexico] community properties just as courts do in New
Mexico regarding out-of-state properties."); McElreath v. McElreath, 345 S.W.2d 722 (Tex. 1961).

      iii.    DPI apparently conveyed the Property to Plaintiff Galaxy before the
Allens sued DPI for rescission.  By doing so, however, DPI did not necessarily insulate the Property
from the relief the Allens seek.  Plaintiff was not a bona fide purchaser – or at least the Texas court
could so determine – because DPI was Plaintiff's sole manager and 50% owner at the time, and
Plaintiff therefore had notice of DPI's alleged misconduct.  See, e.g., Jackson Nat'l Life Ins. Co. v.
Receconi, 113 N.M. 403, 412, 827 P.2d 118, 127 (1992) ("[N]otice to an agent, or knowledge
imputed to him, is notice to the company, regardless of whether or not the agent actually
communicates the information to the company."); Stearns-Roger Mfg. Co. v. Aztec Gold Mining &
Milling Co., 14 N.M. 300, 329-30, 93 P. 706, 713 (1908) (notice to corporation's general manager

regarding improvements made by plaintiff to corporation's real property sufficed to subject property to plaintiff's mechanic's liens).

        iv.    If the Texas court decides that DPI concealed material facts from the Allens, and that the Allens would therefore be entitled to rescission as against DPI, and that Plaintiff Galaxy was not a bona fide purchaser of the Property from DPI, the Texas court will possess the power to order DPI to restore to the Allens their 50% interest in the Property. See NMSA 1978, § 53-19-30(E) (1993) ("[T]itle to property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any manager in the name of the limited liability company ...."). Any such judgment will be binding on Plaintiff Galaxy, because the managing officers of an unincorporated association – such as a limited liability company, see Martinez v. Roscoe, 2001-NMCA-083, ¶¶ 6, 9, 131 N.M. 137, 33 P.3d 887 – are deemed to represent the association and its members with respect to association property and contracts, and "[a] person who is not a party to an action but who is represented by a party is bound by ... a judgment as though he were a party." Restatement (Second) of Judgments § 41(1) (1982); see id. cmt. b; see also, e.g., United States v. Maxwell Land Grant Co., 5 N.M. 297, 307, 21 P. 153, 156 (1889) (equity court has power to determine the rights of parties "or their privies" with respect to land in another state).

        b.    The lis pendens statute's explicit authorization of public-records notice concerning title-affecting litigation "[i]n all actions in the district court of this state or in the United States district court for the district of New Mexico," NMSA 1978, § 38-1-14 (1965), did not prohibit the Allens from providing public-records notice of a Texas lawsuit. The language of the statute does not compel a restrictive interpretation, and the statute's twin objectives – protecting the finality of

judgments and sparing prospective purchasers from "buying a lawsuit" – are advanced by allowing notice of extraterritorial lawsuits. See, e.g., Belleville State Bank v. Steele, 345 N.W.2d 405 (Wis. 1984). A contrary construction of the statute would violate the Full Faith and Credit Clause, see U.S. Const. art. IV, § 1, by discriminating against out-of-state judicial proceedings and the judgments that flow from them. And it would do so by means that were themselves constitutionally infirm – by imposing a prior restraint on truthful speech, a restraint based on either the content of the speech or the citizenship of the speaker.

4.      Accordingly, Plaintiff is not entitled to an order requiring the Allens to remove the Affidavit from the public records of Bernalillo County, or an order "canceling and/or voiding any and all effect of said Affidavit." Any such order would irreparably harm the Allens by permitting DPI to avoid the effect of a judgment granting rescission in the Texas Litigation, or else it would harm the public interest by withholding critical information from prospective purchasers of the Property.

5.      To the extent that Plaintiff contends that its record ownership of the Property renders the Affidavit unlawful, Plaintiff's equitable claims are barred by the doctrines of waiver, estoppel, and unclean hands, because Plaintiff's manager and 50% owner has repeatedly asserted that DPI owns the Property.

6.      Plaintiff's request for a quiet-title decree is premature unless and until the Allens (1) lose their rescission claim in Texas, and (2) thereafter refuse to remove the Affidavit from the public records.

7.      Defendants are entitled to judgment in their favor on Plaintiff's equitable claims.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.


By _K Purcell_

Charles K. Purcell
Attorneys for Defendants Tim and Gregg Allen
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: (505) 765-5900


- and -


PEIFER, HANSON & MULLINS, P.A.
Charles R. Peifer
Cerianne L. Mullins
Attorneys for Defendant Carl Rosenblum
Post Office Box 25245
Albuquerque, New Mexico 87125-5245
Telephone: (505) 247-4800


We hereby certify that we have
mailed the foregoing to

Bill Chappell, Jr.
Michael Hoeferkamp
Albuquerque Centre, Suite 150
6001 Indian School Road NE
Albuquerque, N.M. 87110

this 3d day of October, 2005.


_K Purcell_
Charles K. Purcell


9